IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN R. WILK,

                              Plaintiff,

        v.                                                    OPINION and ORDER

FRANK J. BISIGNANO,[1]                                        23-cv-664-jdp
Commissioner of Social Security,

                              Defendant.

---

Plaintiff Brian R. Wilk suffered physical and mental impairments after cancer treatments. From 2006 to 2019, he received social security disability benefits. Now Wilk seeks judicial review of a final decision of defendant Frank J. Bisignano, Commissioner of the Social Security Administration, finding that Wilk had medically improved and thus was no longer disabled within the meaning of the Social Security Act. Wilk contends that administrative law judge (ALJ) Guila Parker failed to assist Wilk, who was unrepresented at the time, with developing the record, and failed to ensure that the vocational expert's testimony was reliable. The ALJ's decision is supported by substantial evidence, and Wilk has not identified any legal errors, so the court will affirm the decision.

Wilk also challenges the Appeals Council's decision to deny review of the ALJ's decision. Wilk contends that the Appeals Council failed to evaluate the additional evidence that Wilk provided to it and failed to support its decision with adequate reasoning. But the court will not

---

[1] The court has amended the caption to reflect Frank J. Bisignano's appointment as Commissioner. *See* Fed. R. Civ. P. 25(d).

reach Wilk's contentions because the Appeals Council's denial of Wilk's request for review is not subject to judicial review.

BACKGROUND

Wilk applied for disability benefits in March 2006, and in May 2006, Wilk was found to be disabled since August 22, 2005. R. 2844, 2987.[2] In January 2014, a continuing disability redetermination decision (CDR) found that Wilk continued to be disabled. R. 2844. At the time of the January 2014 decision, Wilk suffered from both physical and mental impairments. R. 2846. The physical impairments were acute lymphoblastic leukemia in remission; and multiple complications of medical treatment, including graft versus host disease, keratoconjunctivitis sicca with cataracts, nonischemic cardiomyopathy, myofascial pain syndrome, neuropathy, hypogonadism with osteopenia. *Id.* The mental impairments, which were also complications of medical treatment, included cognitive, post-traumatic stress; pneumonitis; and obsessive-compulsive disorders. *Id.* The ALJ who performed the CDR ascribed to Wilk the residual functional capacity (RFC) to perform sedentary work with additional limitations that precluded employment. *Id.*

A further CDR in 2019 leads to this appeal. That CDR found that Wilk was no longer disabled as of November 20, 2019. R. 2844. Wilk was also found to be no longer disabled at the reconsideration level. *Id.* Wilk requested a hearing before an ALJ, which was held on November 30, 2022. *Id.* The ALJ found that, since November 20, 2019, Wilk suffered from

---

[2] Record cites are to the administrative transcript located at Dkts. 9–24. Citations to filings from the docket, other than the administrative transcript, use the page numbers assigned by CM/ECF, not the page numbers in the original document.

physical impairments, some of which were severe, and mental impairments. R. 2846. Wilk's severe physical limitations are chronic pain syndrome, bilateral hip deformity, and right elbow tendonitis. R. 2852. His non-severe physical impairments are acute lymphoblastic leukemia, in sustained remission; peripheral neuropathy; peroneal tendonitis/metatarsalgia/pes cavus foot; cardiomyopathy; mild degenerative disc disease of the lumbar spine; hypogonadism; and diarrhea. *Id.* Wilk's mental impairments are depression and anxiety. *Id.* The ALJ found that Wilk's condition had improved and ascribed to Wilk the RFC to perform the full range of light work with additional limitations. R. 2850. The ALJ found that Wilk had no past relevant work. R. 2858. Relying on the testimony of a vocational expert, the ALJ found that Wilk could perform jobs that exist in significant numbers in the national economy, such as cashier II, sales attendant, and marker. R. 2859. The ALJ concluded that Wilk's disability ended on November 20, 2019, and that he had not become disabled again since that date. *Id.*

Wilk requested that the Appeals Council review the ALJ's decision, but Wilk's request for review was denied, making the ALJ's decision the final decision of the Commissioner. R. 2. The Appeals Council noted that Wilk had supplied additional medical records as evidence. R. 3–4. But the Appeals Council found that "all of the newly submitted evidence [did] not show a reasonable probability that it would change the outcome of the [ALJ's] decision." R. 4. Wilk now appeals the ALJ's decision to this court.

## ANALYSIS

### A.  The ALJ's decision

This matter arises from a medical improvement determination under 20 C.F.R. § 404.1594, which requires the ALJ to follow an eight-step analysis. The ALJ must first make

intermediate determinations concerning the status of plaintiff's original impairments and then determine the claimant's RFC considering all his current limitations. Wilk does not challenge the ALJ's findings related to his impairments or his RFC. Instead, Wilk contends that the ALJ erred in two ways: (1) the ALJ failed to uphold her duty to assist Wilk, who was then proceeding without counsel, with developing the administrative record; and (2) the ALJ's finding that Wilk could perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence. Dkt. 30, at 21–23, 45–55.

### 1. Duty to develop the record

When claimants proceed without counsel, ALJs have a heightened duty to uncover all evidence necessary to make their disability determinations. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019). Courts generally defer to the ALJ's determination of how much evidence must be gathered before rendering a decision, even when a claimant is proceeding without counsel. *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023). An ALJ is not required to update the claimant's medical records to the time of the hearing. *Luna v. Shalala*, 22 F.3d 687, 692–93 (7th Cir. 1994). But an ALJ fails to fulfill her heightened duty to develop the record if a significant omission from the record prejudices the proceedings. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Wilk contends that the ALJ failed to fulfill her heightened duty to assist him with developing the administrative record because the record did not include Wilk's medical records from Group Health Cooperative; a March 14, 2023, letter from his hematologist; or any medical evidence after November 16, 2022. *See* Dkt. 40, at 7–17. But the administrative record *did* include his medical records from Group Health Cooperative; after Wilk's hearing, the ALJ obtained those records up to February 24, 2023, R. 4651–4976, which brought the record up

to date before the ALJ's decision issued March 1, 2023. Wilk nevertheless contends that those records were not before the ALJ because the ALJ did not discuss them, and they are not included on the list of medical exhibits accompanying the ALJ's decision. Dkt. 40, at 13 n.3; *see* R. 2867. But an ALJ need not provide written evaluation of every piece of medical evidence, particularly when the omitted evidence does not reveal any substantially different information than the evidence that the ALJ addressed. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Deborah M. v. Saul*, 994 F.3d 785, 788–89 (7th Cir. 2021). Wilk does not argue that the ALJ ignored an entire line of evidence supporting a finding of disability. Wilk also contends that he did not receive a letter from the ALJ proffering the medical records as evidence. Dkt. 40, at 13 n.3. But Wilk waived his right to that proffer during his hearing with the ALJ, permitting the ALJ to place the medical records into the administrative record without Wilk's review. *See* R. 36–37.

The letter from Wilk's hematologist post-dates the ALJ's decision, so the ALJ can't be faulted for failing to get the letter into the record. Besides, the two-page letter describes Wilk's medical history and does not offer any specific medical opinions, apart from observing that Wilk has "many long-standing medical complications that will continue for the rest of his life" and "[w]e are not expecting any of these symptoms to improve over time." R. 104. Wilk has not shown that the omission of the letter prejudiced the proceedings or would have changed the ALJ's mind about whether Wilk continued to be disabled.

The court concludes that the ALJ had a reasonably complete medical record before her, and that the one missing item was not material. Remand is unwarranted on that basis.

### 2. Vocational expert testimony

Wilk contends that the ALJ's finding that Wilk could perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence because the ALJ failed to ensure that the vocational expert's testimony was based on a reliable methodology. Dkt. 30, 45–55. Substantial evidence supports an ALJ's reliance on a vocational expert's testimony if the vocational expert uses a reliable methodology from well-accepted sources and if the ALJ can readily trace the path of reasoning the vocational expert used to arrive at the job estimates. *Hohman v. Kijakazi*, 72 F.4th 248, 253 (7th Cir. 2023).

The central issue here concerns the vocational expert's use of the software application SkillTRAN's Job Browser Pro to reach her job estimates. R. 61. The reliability of Job Browser Pro has been a point of controversy, but the court of appeals has recently approved its use. This court previously observed that "[n]either the Seventh Circuit nor this court has found as a matter of law that Job Browser Pro employs reliable methods." *Wegerer v. Kijakazi*, No. 22-cv-123-jdp, 2023 WL 6307407, at *4 (W.D. Wis. Sept. 28, 2023). But the Seventh Circuit recently held that vocational experts employ a reliable methodology when they use Job Browser Pro because it is a well-accepted source. *Chavez v. O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024). This court previously required vocational experts to "explain how Job Browser Pro makes its job number estimates, how she used the software to generate her own estimates and why she believes those estimates are reliable." *Staples v. Kijakazi*, No. 21-cv-379-jdp, 2023 WL 2753855, at *4 (W.D. Wis. Apr. 3, 2023) (citation omitted). But the Seventh Circuit recently held that substantial evidence supported an ALJ's reliance on a vocational expert's testimony when the vocational expert used Job Browser Pro and "explained that her testimony was consistent with the Dictionary of Occupational Titles and Standard Occupational

Classification." *Matthiscyk v. Bisignano*, No. 24-2488, 2025 WL 2835768, at *3 (7th Cir. Oct. 7, 2025).

In this case, the vocational expert explained that Job Browser Pro "obtains [publicly] available labor statistics from government sources including the Bureau of Labor Statistics and Census Data, so the occupational group codes[,] and then they further estimate down to the specific [Dictionary of Occupational Titles] Codes," which the vocational expert said she cited in her testimony. R. 61; *see* R. 58–59. The vocational expert further explained that she included only full-time job numbers to reach her job estimates. R. 61. The ALJ did not err in accepting the vocational expert's testimony in this case.

## B.  The Appeals Council's decision

Wilk also contends that the Appeals Council erred in denying his request for it to review the ALJ's decision. Dkt. 30, at 23–45. But the Appeals Council's decision to deny Wilk's request for review is not generally subject to judicial review. *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1991). The Appeals Council's decision to deny a request for review is subject to judicial review only if the Appeals Council makes a legal error. For example, courts may review the Appeals Council's decision if it *rejects* evidence as not "new and material." *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 816–17 (7th Cir. 1993); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). But when the Appeals Council accepts the evidence and determines that the evidence would not have changed the outcome of the ALJ's decision, its discretionary denial is not reviewable. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997); *Ross v. Barnhart*, 119 F. App'x 791, 797 (7th Cir. 2004). In this case, the Appeals Council noted that Wilk submitted additional medical evidence. R. 3–4. The Appeals Council found that the "newly submitted evidence does not show a reasonable probability that it would change the

outcome of the [ALJ's] decision." R. 4. Accordingly, the Appeals Council's discretionary decision is not subject to judicial review.

ORDER

IT IS ORDERED that: the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered March 24, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge